EL VOCERO DE PUERTO RICO, peticionario, *v.* HON. NICOLÁS NOGUERAS, demandado.

*Número:* MD-95-4          *Resuelto:* 14 de junio de 1995

*Juan R. Marchand Quintero* y *Francisco Ortiz Santini,* de *Rivera Cestero & Marchand Quintero,* abogados del peticionario; *Nicolás Nogueras Cartagena, pro se; Héctor Anibal Castro-Pérez* y *Olyvette Rodríguez,* abogados del Director de la Oficina de Ética Gubernamental de Puerto Rico.

PER CURIAM: El Vocero de Puerto Rico (en adelante *El Vocero*) nos pide que revisemos la sentencia mediante la cual denegamos su recurso de *mandamus* por considerarlo académico. Dicho recurso nos solicitaba que ordenáramos al Senador Nicolás Nogueras a suministrarle al peticionario una copia de su informe financiero para 1993, según lo requiere la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental). Nuestro dictamen estuvo basado en la información incluida en la comparecencia del Director Ejecutivo de la Oficina de Ética Gubernamental (en adelante Director de la Oficina de Ética Gubernamental) a los efectos de que, aunque tardíamente, el Senador Nogueras había sometido el informe financiero, y la Comisión de Ética del Senado había suministrado una copia de éste a la prensa del país.

En su moción de reconsideración, *El Vocero* sostiene que nunca recibió copia de dicho informe. Reexaminada la petición de *El Vocero* a la luz de los escritos de las partes y de las comparecencias especiales del Senado y de la Oficina de Ética Gubernamental, procede reconsiderar nuestro anterior dictamen y expedir el auto solicitado.

I

Mediante una petición de *mandamus, El Vocero* solicitó que este Tribunal ordenara al Senador Nicolás Nogueras a proveerle una copia del informe financiero de 1993 que tenía que presentar ante la Oficina de Ética Gubernamental, a tenor con lo dispuesto en el Art. 4.1(a)(6) de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1831(a)(6). Pendiente ante nuestra consideración dicho recurso, el Director de la Oficina de Ética Gubernamental nos informó que el Senador Nogueras había presentado tardíamente el informe de 1993 y que "la Comisión de Etica del Senado puso a la disposición de la prensa del País". Moción en cumplimiento de resolución, pág. 3. Enterados por este medio de que el Director Ejecutivo había recibido el informe y que éste se encontraba a la disposición del peticionario, denegamos el *mandamus* por academicidad.

Posteriormente, *El Vocero* solicitó la reconsideración de nuestro dictamen y alegó que el recurso no se había tornado académico. Sostuvo que como el Director de la Oficina de Ética Gubernamental no había afirmado que el Senador Nogueras hubiese cumplido con todos los requisitos del Art. 4.4 de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1834, el informe sometido por el Senador Nogueras no estaba completo. Además, señaló que la Oficina de Ética Gubernamental había inducido a error a este Tribunal "[a]l sugerir que por el hecho de que El Nuevo Día reseñara el contenido del informe del demandado, [debía concluirse que] el mismo había sido puesto 'a la disposición de la

prensa del País' ". Solicitud de reconsideración y determinación de hechos, pág. 4 esc. 7. *El Vocero* afirmó que, en efecto, ellos no habían obtenido una copia del informe.

Mediante la Resolución de 23 de marzo de 1995, concedimos un término al Director de la Oficina de Ética Gubernamental para que contestara estas imputaciones. Oportunamente, éste compareció y reiteró que "la OEG pudo acreditar en un breve plazo que efectivamente el informe financiero estaba disponible [para] la prensa en la Comisión de Etica del Senado por autorización expresa del propio senador Nicolás Nogueras". Moción en cumplimiento de resolución del 23 marzo de 1995, pág. 4. Ante este hecho, el Director de la Oficina de Ética Gubernamental cuestionó que *El Vocero* no hubiese solicitado el informe a la Comisión de Ética del Senado y concluyó que esto constituía una actuación "inapropiada cuando [le] ha dado la espalda al acceso y disposición del informe financiero que hiciera el senador Nogueras". Íd., pág. 5.

Por su parte, a requerimiento nuestro, el Senado de Puerto Rico compareció y refrendó la tesis de que el recurso era académico porque el Senador Nogueras había sometido el informe financiero de 1993, y que copia de éste había sido remitida a la secretaría de ese cuerpo. No obstante, expuso que como la Secretaría no estaba autorizada a recibir el informe directamente de los Senadores, se lo habían devuelto:

> Como algo que huelga decir, el Senado de Puerto Rico no puede certificar para dar a la prensa un estado financiero que no llega a la Secretaría del Senado *certificado* por la OEG (según establece el Reglamento sobre radicación de informes financieros por los Senadores, funcionarios y empleados del Senado de Puerto Rico ...) que en efecto ese fue el estado financiero que se radicó en la OEG. De más está decir que por esa razón es que en el Reglamento ... del Senado 131, se establece en el artículo 10 que tiene que ser vía la OEG que se radique en la Secretaría del Senado. Moción en cumplimiento de resolución del 4 de abril de 1995, págs. 3–4.

El Senador Nogueras también compareció y adoptó en todas sus partes la posición asumida por el Senado de Puerto Rico. Además, señaló que "las afirmaciones hechas por la Oficina de Etica Gubernamental en su escrito ante este Honorable Tribunal son totalmente correctas". Moción en cumplimiento de resolución del 4 de abril de 1995, pág. 1.

Recibidas estas comparecencias, la moción de reconsideración quedó sometida para nuestra adjudicación. No obstante, el peticionario sometió varios escritos adicionales cuestionando las afirmaciones del Director de la Oficina de Ética Gubernamental. Éste, por su parte, recientemente nos informó lo siguiente:

1. Con fecha de 27 de febrero de 1995, el senador Nicolás Nogueras presentó a la Oficina de Etica Gubernamental el informe financiero de 1993.

2. Recibido el informe financiero, se evaluó de conformidad con el Artículo 4.10 (d) de la Ley de Etica Gubernamental, Ley Núm. 12 de 24 de julio de 1985, según enmendada y del Artículo 8 del Reglamento sobre Radicación de Informes Financieros por los Senadores, Funcionarios y Empleados del Senado de Puerto Rico, R. del S. 131 de 18 de marzo de 1993.

3. La Oficina de Etica Gubernamental concluyó la evaluación de ese informe financiero. El original del mismo se remitió a la Secretaría del Senado, de acuerdo con el Artículo 10 del Reglamento, citado. De otra parte, también se refirió copia del informe financiero a la Comisión de Etica del Senado con unas observaciones para su evaluación y acción correspondiente, según el Artículo 9 del Reglamento del Senado. Moción informativa, pág. 1.

## II

El Art. 4.1 de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1831, le impone a los "miembros de la Asamblea Legislativa" el deber ministerial de rendir anualmente un informe financiero a la Oficina de Ética Gubernamental. A tenor con su poder constitucional de aprobar las reglas de procedimiento y de gobierno interno,

así como con lo dispuesto en el inciso (j) del Art. 2.4 de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1814(j), el Senado aprobó el Reglamento sobre Radicación de Informes Financieros por los Senadores, Funcionarios y Empleados del Senado de Puerto Rico. Este reglamento reitera la obligación de todos los Senadores de presentar anualmente un informe financiero en la Oficina de Ética Gubernamental y describe la información que se requiere.

■ Rendir los informes financieros requeridos por este ordenamiento constituye claramente una obligación legal que surge del cargo público y no admite discreción en su ejecución. Su incumplimiento constituye un delito grave que, de probarse, impide que un miembro de la Asamblea Legislativa pueda postularse nuevamente.

■ La Ley de Ética Gubernamental también dispone unas reglas sobre el acceso público a los informes financieros, 3 L.P.R.A. sec. 1838. En el caso particular de los legisladores, el estatuto dispone que los informes financieros se convierten en documentos públicos cuando el Director de la Oficina de Ética Gubernamental verifica que la información está completa y determina que el documento es final. Véase Art. 4.10(d) de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1840(d). Sin embargo, recientemente, el 22 de diciembre de 1994, el Gobernador de Puerto Rico, Hon. Pedro Rosselló, firmó la Ley Núm. 150 (3 L.P.R.A. secs. 1802, 1814, 1821–1825, 1827–1828, 1831, 1834–1835, 1838, 1840 y 1851) que limitó el acceso público a los informes de los miembros de la Asamblea Legislativa. Esta nueva ley requiere que, para lograr acceso a dichos informes, la parte interesada someta una solicitud escrita bajo juramento en la que fundamente su creencia "de que existe una posible violación a las disposiciones de este Capítulo que justifique la concesión de acceso al informe financiero". 3 L.P.R.A. sec. 1838(d)(4). Véase Art. 13 de Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1838).

■ Esta restricción no impide que los legisladores o los funcionarios públicos cubiertos por la Ley de Ética Gubernamental autoricen el acceso de la prensa del país a los informes una vez los presentan en la Oficina de Ética Gubernamental. Cuando esto ocurre, el Director de la Oficina de Ética Gubernamental queda implícitamente autorizado por el funcionario a permitir la inspección de y el acceso a sus respectivos informes sin necesidad de que la parte interesada cumpla con los requisitos recientemente aprobados mediante el Art. 5.1(a) de la Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1851(a)).

■ En el caso de los Senadores, el Art. 10 del Reglamento sobre Radicación de Informes Financieros por los Senadores, Funcionarios y Empleados del Senado de Puerto Rico, Senado de Puerto Rico, 18 de marzo de 1993, pág. 178, dispone que una vez el Director de la Oficina de Ética Gubernamental "determina que el informe financiero llena los requisitos establecidos en este Reglamento, procederá a firmar y fechar el mismo y lo remitirá al Secretario del Senado". Aunque la Ley Núm. 150, *supra*, dispone que el acceso público se rige por los requisitos del Art. 4.8 del estatuto, 3 L.P.R.A. sec. 1838, cuando un Senador autoriza su divulgación a la prensa, el Secretario del Senado debe entregar una copia del informe financiero a cualquier medio de comunicación que lo solicite.

Al amparo de la normativa explicada anteriormente, reexaminamos el caso de autos.

### III

Aunque en el caso de autos el Director de la Oficina de Ética Gubernamental nos informó que el Senador Nogueras cumplió tardíamente con su deber ministerial de someter el informe financiero de 1993, y que éste había sido puesto a la disposición de la prensa, las comparecencias posteriores revelan que *El Vocero* no tuvo acceso al informe

porque el Secretario del Senado le devolvió el documento al Senador Nogueras.

El Director de la Oficina de Ética Gubernamental fundamentó su afirmación en las siguientes declaraciones del Senador Nogueras en las que se comprometió a entregarle a la prensa del país una copia del informe tan pronto fuese presentado en la Oficina de Ética Gubernamental:

> ... En la tarde de hoy nuevamente le enviaré al Director de la Oficina de Etica Gubernamental el documento público ... cuyo contenido en un informe auditado él me devolviera, pero esta vez vaciado en los formularios oficiales del Senado, correspondiente al informe financiero de 1993. A este documento tendrán acceso todos ustedes tan pronto sea radicado y eso terminará las especulaciones en torno al mismo a pesar de que se radique un informe auditado como el que yo radiqué desde el año pasado en dicha Oficina de Etica y ante la Comisión de Etica del Senado. Anejo B.

Además, el Director de la Oficina de Ética Gubernamental partió de la premisa de que como otro diario del país publicó una reseña del informe, los demás periódicos también obtuvieron acceso al documento. Sin embargo, en su comparecencia especial, el Senado de Puerto Rico nos explicó que el Secretario de ese cuerpo recibió el informe pero lo devolvió porque no se había recibido bajo el trámite establecido por el Reglamento sobre Radicación de Informes Financieros por los Senadores, Funcionarios y Empleados del Senado de Puerto Rico.

De la información anterior se desprende que cuando el Director de la Oficina de Ética Gubernamental nos informó que el informe financiero de 1993 había sido puesto a la disposición de la prensa, incurrió en un error de juicio al no confirmar la información recibida y depender de las declaraciones públicas del Senador Nogueras. En vista de las declaraciones del Senador Nogueras, en las que se comprometió a poner a la disposición de la prensa el informe en controversia, entendemos que tanto el Director de la Oficina de Ética Gubernamental como el Secretario del Se-

nado estaban expresamente autorizados a permitir el acceso del informe a los medios de comunicación tan pronto el informe fuera recibido por éstos.

Dadas estas circunstancias, aunque el Senador Nogueras cumplió con su deber de rendir el informe financiero de 1993 en la Oficina de Ética Gubernamental, y al someterlo convirtió en académica la petición de *El Vocero* de que le ordenásemos que cumpliera con tal obligación, como el Senador Nogueras aceptó públicamente y ante este Foro que él se comprometió a entregarle a la prensa las copias del informe requerido por el peticionario, procede que vía reconsideración se le ordene que cumpla con su compromiso. A los fines de facilitar el acceso inmediato del informe a *El Vocero*, se autoriza tanto al Director de la Oficina de Ética Gubernamental como al Secretario del Senado de Puerto Rico a entregarle al periódico la copia del documento sin que se le requiera cumplir con los requisitos del Art. 4.8 del estatuto, *supra*.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Negrón García disintió con una opinión escrita. El Juez Asociado Señor Rebollo López disintió por los fundamentos que expusiera en la opinión disidente y concurrente que emitiera en el presente caso el pasado 16 de marzo de 1995. La Juez Asociada Señora Naveira de Rodón no intervino.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

I

La *sentencia* original mayoritaria de 16 de marzo nunca debió denegar este *mandamus* contra el Senador Nicolás

Nogueras por "académico". Ese decreto se fundamentó erradamente en que "la Comisión de Ética del Senado *había suministrado* copia del mismo [*Informe Financiero* de 1993 del Senador Nogueras] a la *prensa del país*". (Énfasis y corchetes suplidos.) *El Vocero de P.R. v. Nogueras I*, 138 D.P.R. 103 (1995). A igual conclusión arribaron las opiniones "de conformidad".(¹)

Partiendo de esa errónea proposición, desarrollaron un *silogismo clásico*, el cual indefectiblemente desembocó en la equivocada conclusión de que a *El Vocero de Puerto Rico* se le había entregado y tenía una copia del Informe. Como una de las alternativas, podríamos esquematizar así ese razonamiento silogístico:

*Primera Premisa*: La Comisión de Ética del Senado suministró la copia del Informe Financiero de 1993 del Senador Nogueras a la "prensa del país".

*Segunda Premisa*: El periódico *El Vocero de Puerto Rico* forma parte de la "prensa del país".

*Conclusión*: Luego entonces, *El Vocero de Puerto Rico* tiene en su poder una copia de dicho informe.

*La verdad es otra*. Recordamos el pensamiento del poeta Salvador Espriu: " 'Pensad que el espejo de la verdad se desmenuzó en un principio en pequeñísimos fragmentos, y que cada uno de ellos recoge en sí una brizna de auténtica luz.' " G. Rodríguez Mourullo, *Aplicación judicial del Dere-*

---

(¹) En su opinión de conformidad, el Juez Asociado Señor Hernández Denton, a quien se unieron los Jueces Asociados Señores Alonso Alonso y Fuster Berlingeri, aseveró: "Como *El Vocero y todos los otros medios obtuvieron copia de dicho informe*, el peticionario ya obtuvo la información que solicitó en el Recurso de *mandamus*. Por lo tanto, su petición original ante nosotros es totalmente académica." (Énfasis suplido y en el original.) *El Vocero de P.R. v. Nogueras I*, 138 D.P.R. 103, 112 (1995).

En la opinión de conformidad del Juez Asociado Señor Alonso Alonso, éste argumentó: "*La posición del Juez Asociado Señor Negrón García no se entiende*. Pretende que le ordenemos a la Oficina de Ética Gubernamental que le entregue a *El Vocero* un informe financiero que *como cuestión de hecho ya éste tiene en su poder*. Ello es un ejercicio en futilidad. *Lo que ya se tiene no hay que darlo*." Subsiguientemente expuso: "Además, como bien señala la Opinión de conformidad del Juez Asociado Señor Hernández Denton, a la cual me he unido, *como ya se ha entregado el informe financiero* a la Oficina de Ética Gubernamental y a *El Vocero* ...." (Énfasis suplido y en el original.)

*cho y lógica de la argumentación jurídica*, Madrid, Ed. Civitas, 1988, pág. 16.

La *reconsideración* de *El Vocero de Puerto Rico*, cónsona con su petición de *mandamus*, es un fragmento del espejo de esta verdad: *no tenía ni se le entregó una copia del susodicho informe.*

Las comparecencias escritas de los protagonistas de este incidente revelan que lo *único* que hizo el Senador Nogueras en la Conferencia de Prensa de 24 de febrero de 1995 fue anunciar la presentación del segundo Informe y "el acceso que la ley le permite a todos ustedes" (Anejo B, pág. 1), esto es, su *disponibilidad* a la prensa. El 27 de febrero envió a la Oficina de Ética Gubernamental dicho informe. En esa misma fecha remitió la copia a la Secretaría del Senado, que al otro día le fue devuelta.

Al dictar su *sentencia* original, este Foro no debió equiparar, indistintamente, "acceso o disponibilidad" con "suministro, entrega y posesión". Tampoco avalar los métodos extrajudiciales de un litigante que caprichosa, unilateral y ventajosamente pretendió convertir en "académico" un caso en su contra; máxime revestido de tan alto interés público, en menoscabo de nuestras prerrogativas constitucionales adjudicativas y recta imagen institucional. Veamos.

## II

*Procesalmente*, como demandado objeto del recurso extraordinario de *mandamus*, el estándar mínimo de deferencia y respeto hacia este Tribunal por el Senador Nogueras, le exigían comparecer, informarnos y simultáneamente *remitir una copia del informe a El Vocero de Puerto Rico*. Sólo así podía seriamente plantearse si ello tornaba la acción en académica.

Lamentablemente, el Senador Nogueras optó por una conferencia de prensa. *Ignoró los trámites judiciales pendientes ante nos.* No fue hasta el 3 de abril, postsentencia, que se le ordenó que compareciera en un término no mayor de diez (10) días "para exponer su posición sobre el acceso de la prensa a dicho informe".

Corregir el erróneo supuesto de hecho en que se basó la *sentencia* original mayoritaria, ha conllevado un trámite en reconsideración de múltiples escritos y recriminaciones recíprocas entre *El Vocero de Puerto Rico* y el Director de la Oficina de Ética Gubernamental, Lcdo. Héctor A. Feliciano Carreras, y por primera vez, oportunidad de audiencia al Senado de Puerto Rico. Y en su comparecencia, el Senado nos expuso que ni su Secretaría como tampoco su Comisión de Ética, tenían bajo custodia —y menos para entregar a la prensa del país— ese segundo informe. Como resultado, el Senado concluyó que la acción del Senador Nogueras "no hace disponible el mismo mediante el trámite establecido en el Reglamento ...". Moción en cumplimiento de resolución de 4 de abril de 1995, pág. 2. Para el 18 de mayo, el Director de la Oficina de Ética Gubernamental nos informó haberlo evaluado, remitido el original a la Secretaría del Senado y *referido una copia a la Comisión de Ética* "con unas observaciones para su evaluación y acción correspondiente, según el Artículo 9 del Reglamento del Senado". Moción informativa, pág. 1. Y en su último escrito, nos dice que finalmente el Senador Nogueras, en esa misma fecha, presentó la información adicional que faltaba.

Todo este complicado trámite pudo haberse evitado si al usar la lógica formal de puro silogismo a que se redujo la *sentencia* original, antes de dictarla, se hubiese corroborado la información con que se erigió la premisa mayor; único modo de llevar el silogismo a un correcto derrotero. Subsistió entonces la confusión de "acceso o disponibilidad" con "suministro, entrega y posesión".

## III

Ni sus protagonistas ni este tipo de controversia la colocan fuera de nuestra jurisdicción. No podríamos, con todo rigor jurídico, calificarla de "cuestión política" por el solo hecho de estar implicado un miembro del Senado y exista allá un procedimiento interno diseñado para atender la *vertiente disciplinaria.*

*Primero,* "[e]n su sustrato, la Ley de Ética Gubernamental diseña igual trámite para todos los funcionarios sujetos a sus disposiciones, *incluso la revisión judicial,* pero reconoce a los legisladores un procedimiento *interno paralelo* que responde a la facultad conferida a la Legislatura mediante el Art. III, Sec. 9 de nuestra Constitución, L.P.R.A., Tomo 1. Ese lenguaje constitucional no 'margina al Poder Judicial; no se le priva de jurisdicción sobre la materia'. *Santa Aponte v. Srio. del Senado,* 105 D.P.R. 750, 759 (1977). A fin de cuentas, '[n]ingún poder es absoluto en nuestro ordenamiento ...'. Íd.".(²) (Énfasis en el original y escolio omitido.) *El Vocero de P.R. v. Nogueras I,* supra, opinión disidente, págs. 132–133.

*Segundo,* "todo legislador está sujeto al crisol del Poder Judicial. La legislación aplicable simple y llanamente visualiza a los tribunales y a las cámaras legislativas como *vasos intercomunicantes* cuyas gestiones sobre el mismo asunto no son mutuamente excluyentes, sino cónsonas con sus respectivos deberes y prerrogativas constitucionales". (Énfasis en el original.) *El Vocero de P.R. v. Nogueras I,* supra, opinión disidente, pág. 132.

Y *tercero,* "[l]a Ley de Ética Gubernamental alcanza a numerosos funcionarios electos y nombrados (legisladores, secretarios del gabinete, jueces y otros), y pretende prevenir y penalizar conducta antiética que traicione la confianza pública, mediante el principio de que sus ingresos y

---

(²) Esta y otras citas subsiguientes corresponden a nuestro disenso a la sentencia original.

finanzas están sujetos al escrutinio público. *El axioma inmerso que nutre la Ley de Ética Gubernamental es que la 'luz solar es el mejor desinfectante'. Sin la oportuna publicidad de los informes financieros, la Ley de Ética Gubernamental sería vana ilusión*". (Énfasis en el original y énfasis suplido.) *El Vocero de P.R. v. Nogueras I*, supra, pág. 133.

## IV

Reafirmamos que el antes aludido curso de acción del Senador Nogueras no convirtió en académico el *mandamus*. "La ciencia del Derecho o sirve a la vida o no sirve para nada: lo que quiere decir que el destino de la ciencia jurídica, impuesto por la propia naturaleza de su objeto, es servir a una función práctica, que es regular con justicia los casos de la vida." L. Legaz y Lacambra, *Filosofía del Derecho*, 4ta ed., Barcelona, Ed. Bosch, 1975, pág. 58. Elaboremos.

No se discute que el primer informe del Senador Nogueras fue presentado *tardíamente* el 22 de septiembre de 1994. "No fue jurado ni tiene un desglose de los ingresos y sus fuentes, lo cual *de su faz es insuficiente y una violación crasa a la Ley de Etica y su Reglamento*." Ante esta realidad, ¿cómo concluirse entonces que el recurso era académico? *Al menos la mayoría debió adjudicar este aspecto.*

Ante ese incumplimiento, la querella original presentada en su contra y referida por el Director de la Oficina de Ética Gubernamental, licenciado Feliciano Carreras, a la Comisión de Ética del Senado *no logró nada*. Al cabo de siete (7) meses, el Senador Nogueras *seguía sin acatar la ley*. Asimismo, ante esta realidad no contradicha, *la mayoría debió dictaminarlo en sus méritos*.

Lo expuesto revela que este caso aún conserva su carácter de controversia viva y latente, la cual es *justiciable*. A fin de cuentas, estamos obligados a conceder aquel remedio que proceda de acuerdo con los hechos.

## V

La opinión *per curiam* de hoy nuevamente se apuntala en unas premisas erróneas. Escuetamente cataloga de "académica" (Opinión *per curiam*, pág. 644), la petición original de *mandamus* de *El Vocero de Puerto Rico* en la que exige que el Senador Nogueras cumpliera su deber ministerial de presentar el Informe Financiero de 1993, a base de que lo hizo, si bien, tardíamente. *Pierde este Foro la oportunidad de así denunciarlo.* "El incumplimiento por un legislador de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985, según enmendada, *jamás es asunto académico*. Y ciertamente no puede ser caracterizado como cuestión política (*political question*), vedada al foro judicial. Por el contrario, es materia claramente justiciable sujeta a la oportuna intervención y revisión de los tribunales. '[L]a justicia [no] reconoce castas ni jerarquías ....' *Moreno v. Gore, Gobernador*, 46 D.P.R. 408, 417 (1934)." (Énfasis en el original.) *El Vocero de P.R. v. Nogueras I*, supra, opinión disidente, pág. 130.

De otra parte, la opinión mayoritaria en reconsideración trastoca los más elementales principios del recurso extraordinario del *mandamus*. Su razón de ser es *exigir el cumplimiento de un deber ministerial*. Su génesis y virtualidad dependerá de la existencia *inicial* de esa obligación legal, cuya obediencia pueda compelerla el Tribunal mediante una orden directa al funcionario concernido, bajo apercibimiento de sanciones, incluso desacato.

En recta juridicidad, su acatamiento no puede depender de "compromisos voluntarios", no importa cuán públicos sean. Preguntamos, ¿qué si el Senador Nogueras no hubiese expresado su intención de poner el referido Informe Financiero a la disposición de la prensa? ¿Y si ahora no cumple?

Finalmente, al seguir esta ambivalente vía decisoria, la mayoría invoca la Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. secs. 1802, 1814, 1821–1825, 1827–1828, 1831, 1834–1835, 1838, 1840 y 1851), inaplicable pues su Art. 17 (1994 Leyes de Puerto Rico 1320) dispone que "comenzará a regir inmediatamente después de su aprobación". Es claro que la Ley Núm. 150, *supra*, no tiene efecto retroactivo.

Como el Senador Nogueras debió presentar el informe original el 2 de mayo de 1994, los términos primitivos del estatuto gobiernan. Mediante la aplicación retroactiva, la mayoría menoscaba los derechos adquiridos previamente por la prensa del país a obtener copia de ese Informe *sin necesidad* de acreditar bajo juramento la creencia de que existía una violación a la Ley de Ética que justificaba su acceso.[3]

Recapitulando. Esta sencilla y fácil controversia ha sido objeto de un juego de malabares con el concepto de academicidad y el carácter coercitivo inherente al recurso de *mandamus*. Originalmente, la *sentencia* mayoritaria tildó de "académico" el recurso al concluir silogísticamente que *El Vocero de Puerto Rico* poseía el informe que reclamaba. Hoy, sin embargo, la opinión *Per Curiam* se abstiene de declararlo académico a base de que el Senador Nogueras hizo un "compromiso público" de ponerlo a la disposición de la prensa. En atención a ese "compromiso" se resuelve del recurso. Esa *razón de decidir*, lamentablemente supedita nuestro poder coercitivo para hacer cumplir un deber ministerial mediante el *mandamus* al compromiso "personal voluntario" de un demandado. Si ese es el curso de acción que determina el dictamen mayoritario, ¿procedía una expresión *coactiva* nuestra? Paradójicamente, en su sustrato, con ese compromiso voluntario, ¿no logró finalmente el de-

---

[3] *Quaere* su constitucionalidad.

mandado Senador Nogueras convertir en académico el *mandamus*?